# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MONICA JACKSON | CIVIL ACTION |
| VERSUS | NO. 17-6361 |
| LT. CLINT PATTERSON, ET AL. | SECTION: "S"(1) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed on Behalf of Joel T. Chaisson II in his Official Capacity as District Attorney for the 29th Judicial District, State of Louisiana, Kim K. McElwee, Former Assistant District Attorney for the 29th Judicial District, State of Louisiana, and Harry J., Morel, Jr., Former District Attorney for the 29th Judicial District, State of Louisiana (Doc. #21) is **GRANTED**, and plaintiff's claims against them are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Amended Complaint filed on Behalf of Joel T. Chaisson II in his Official Capacity as District Attorney for the 29th Judicial District, State of Louisiana, Kim K. McElwee, Former Assistant District Attorney for the 29th Judicial District, State of Louisiana, and Harry J., Morel, Jr., Former District Attorney for the 29th Judicial District, State of Louisiana (Doc. #39) is **GRANTED**, and plaintiff's claims against them are **DISMISSED**.[1]

## BACKGROUND

This matter is before the court on a motion to dismiss the complaint and a motion to dismiss the amended complaint filed by defendants: Joel T. Chaisson II, in his Official Capacity as District

---

[1] Plaintiff did not file an opposition to the Motion to Dismiss Amended Complaint. Court personnel called the telephone number for plaintiff on file with the court four times. Each time, the telephone rang once and then disconnected.

Attorney for the 29th Judicial District, State of Louisiana; Kim K. McElwee, former Assistant District Attorney for the 29th Judicial District, State of Louisiana; and, Harry J., Morel, Jr., former District Attorney for the 29th Judicial District, State of Louisiana. Defendants argue that Chaisson and McElwee are entitled to absolute prosecutorial immunity as to plaintiff's claims arising out of her prosecution. The defendants also argue that plaintiff failed to properly state defamation and intentional infliction of emotional distress claims against them.

On June 29, 2017, plaintiff, Monica Jackson,[2] filed this suit against defendants, the St. Charles Parish Sheriff's Office; Sheriff Greg Champagne, in his official capacity; Lieutenant Clint M. Patterson; the St. Charles Parish District Attorney's Office; former District Attorney Harry J. Morel, in his official capacity; and former Assistant District Attorney Kim K. McElwee. Jackson alleges claims under 42 U.S.C. §1983 for deprivation of civil rights and claims for defamation and intentional infliction of emotional distress under Louisiana Civil Code article 2315. Jackson contends that she is being "targeted" by the defendants because she testified before a grand jury for the Federal Bureau of Investigation ("FBI") against Morel. Jackson is African American and all the defendants are Caucasian.

Jackson's allegations concern her arrest by Patterson in 2014 for obstruction of justice. She maintains that she was prosecuted by former assistant district attorney McElwee solely because she had gone to Morel and filed a complaint against McElwee. Jackson alleges she was also being retaliated against for telling detectives of the St. John the Baptist Parish Sheriff's Office that Morel

---

[2] Because plaintiff is proceeding *pro se*, the court must construe her pleadings liberally. Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995). However, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981).

2

had asked her for sexual favors, which she claims lead to an FBI investigation of Morel.[3] Jackson alleges that after being released from jail she began receiving threatening phone calls stating that she should "leave Harry alone," and that a dead bird was left on her window. Jackson claims that only Patterson and other members of the St. Charles Parish Sheriff's Office knew about her involvement with the Morel case.

Jackson also complains about a statement that Patterson took from Kizzy Kensey. Apparently Kensey told Patterson that she had been raped in Jackson's tax office in 2010, but Jackson asserts that she did not open the office until 2011 and did not meet Kensey until 2012. Jackson contends that McElwee sought to use the Kinsey statement against her in court.

Jackson also alleges that when she sought to obtain a background report from the Louisiana State Police at the request of her employer in 2016, there were "inconsistencies" reporting an arrest for rape, while her report from St. Charles Parish did not contain such a charge. Jackson states that when she sought to have the discrepancy corrected with the St. Charles Parish Sheriff's Office, she was told that Patterson had advised that the rape charge was accurate and should not be removed. Jackson was referred to Patterson's supervisor, and it appears that the issue was resolved.

Jackson further alleges that when her son Joshua Every was arrested in 2016, Jackson's mugshot and charges appeared on NOLA.com even though her case was closed and sealed. Jackson attributes the posting to Patterson and states the posting claimed that she was "probably the getaway driver" and the she was "receiving grant money to house inmates." The posting also allegedly stated that Jackson "drives a $65,000 car." Ms. Jackson notes that Patterson interviewed

---

[3] In Criminal Action No. 16-50 in the United States District Court for the Eastern District of Louisiana, Moral pleaded guilty to obstruction of justice in violation of 18 U.S.C. § 1512(d)(1), and is currently serving time in the custody of the Federal Bureau of Prisons.

her son in December 2013 and thus knows the relationship between the two of them. Jackson alleges that Patterson is responsible for the postings on NOLA.com, and that the postings stopped when she reported them to the FBI. Jackson alleges that these postings are defamatory.

Champagne and Patterson filed an Answer. Chaisson, McElwee, and Morel filed the instant Motion to Dismiss. Thereafter, Jackson moved for leave to amend her complaint. On January 5, 2018, the United States Magistrate Judge granted Jackson's Motion for Leave to Amend. In the First Amended Complaint, Jackson adds Chaisson, in his official capacity as District Attorney for the 29th Judicial District, State of Louisiana, as a defendant, and removes both the St. Charles Parish Sheriff's Office and the District Attorney's Office for the 29th Judicial District, State of Louisiana (improperly named as the St. Charles Parish District Attorneys Office) as defendants. The allegations in the First Amended Complaint concern Jackson's defamation claims. Jackson alleges that the defendants gained information about her from their employment and used it to defame her by posting false statements on NOLA.com.

## ANALYSIS

**I.** **Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)). A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the

4

assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 127 S.Ct. at 1965. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). However, the court need not accept legal conclusions couched as factual allegations as true. Iqbal, 129 S.Ct. at 1949-50.

## II.     Absolute Prosecutorial Immunity

Chaisson[4] and McElwee argue that they are entitled to absolute immunity against Jackson's claims to the extent that those claims arise out of their prosecutorial functions. Jackson alleges that McElwee is a former the Assistant District Attorney, and that she charged Jackson with a crime because Jackson allegedly reported misconduct by former District Attorney Morel and that McElwee was involved in a conspiracy with Patterson to keep her in jail with an excessive bond or no bond at all.

Prosecutors are entitled to absolute immunity for acts performed as advocates of the State. Imbler v. Pachtman, 96 S.Ct. 984, 995, n. 33 (1976). "Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process." Boyd v. Biggers, 31 F.3d 279, 285 (5th Cir. 1994). A prosecutor's absolute immunity also extends to "'actions preliminary to initiation of a prosecution and actions apart from the courtroom.'" Buckley v. Fitzsimmons, 113 S.Ct. 2606, 2615 (1993) (quoting Imbler, 96 S.Ct. at 995, n. 33). "Absolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently." Rykers v. Alford, 832 F.2d 895, 897 (5th Cir. 1987). Further, prosecutors are

---

[4] Former District Attorney Morel is named in the original complaint. Jackson added current District Attorney Chaisson, in his official capacity, as a defendant in the First Amended Complaint. Jackson does not specify whether Morel is sued in his official or individual capacity. The United States Court of Appeals for the Fifth Circuit has held that the current district attorney, not the former district attorney, is the proper party for an official capacity suit. Thompson v. Connick, 553 F.3d 836, 869 n. 27 (5th Cir. 2008), *rev'd on other grounds* 131 S.Ct. 1350 (2008). Therefore, Jackson's official capacity claims against Morel are DISMISSED.

absolutely immune from malicious prosecution suits "when the activities complained of fall within the scope of the prosecutor's role as an advocate for the state and are intimately associated with the conduct of the judicial phase of the criminal process." Knapper v. Connick, 681 So.2d 944, 950 (La. 1996). Such absolute immunity is necessary due to the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Imbler, 96 S.Ct. at 991.

Most of Jackson's claims against McElwee arise out of her function as an assistant district attorney as an advocate for the State. Jackson does not ascribe any particular actions to Chaisson and he is presumably named as the District Attorney and McElwee's boss. There is no allegation supporting a claim that McElwee specifically performed any actions regarding Jackson that were outside the scope of her duties as an assistant district attorney representing the State. Therefore, McElwee and Chaisson are entitled to absolute prosecutorial immunity regarding Jackson's claims arising out of the prosecution, and those claims are dismissed.

### III. Jackson's Defamation Claims

Chaisson, Morel and Elwee argue that Jackson did not sufficiently plead defamation claims against them, and that any purported defamation claims against them should be dismissed.

Defamation is a tort involving "the invasion of a person's interest in his or her reputation and good name." Costello v. Hardy, 864 So.2d 129, 139 (La. 2004). Establishing a cause of action for defamation requires four elements: "(1) a false or defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Id. (quotations omitted). The jurisprudence often defines the fault requirement as either actual or implied malice. Id. (citations omitted). "Thus, in order to

6

prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." Id. at 139-140 (quotations omitted).

"Defamatory words" are defined as "words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose them to contempt or ridicule." Id. at 140 (citations omitted). Words that "convey an element of personal disgrace, dishonest, or disrepute are defamatory." Id. (citation omitted). However, a pure statement of opinion, which is based totally on the speaker's subjective view and which does not expressly state or imply the existence of underlying facts, usually will not be actionable in defamation, because "falsity is an indispensable element of any defamation claim and a purely subjective statement can be neither true nor false." Bussie v. Lowenthal, 535 So.2d 378, 381 (La. 1988) (internal citation omitted).

"Whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court." Costello, at 140. This "question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense." Id. (citation omitted).

Louisiana jurisprudence classifies defamatory words as either defamatory *per se* or words that are susceptible of a defamatory meaning. Id. Words that "by their very nature tend to injury one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory *per se*." Id. (citation omitted). Once *per se* defamation has been proved, the elements of falsity, malice (or fault), and injury are presumed, but may be rebutted by the defendant. Id. (citation omitted).

When the words at issue are not defamatory *per se*, but rather are susceptible of a defamatory meaning, the plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice (or fault), and injury. Id. (citation omitted). Publication occurs when words are communicated to a third party absent privilege. Id. at 142. Malice, or fault, "is a lack of reasonable belief in the truth of the statement giving rise to the defamation." Id. at 143. (citations omitted). "The injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish even when no special damage such as loss of income is claimed." Id. at 141 (citations omitted). "Defamatory words" are defined as "words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose them to contempt or ridicule." Id. at 140 (citations omitted). Words that "convey an element of personal disgrace, dishonest, or disrepute are defamatory." Id. (citation omitted). However, a pure statement of opinion, which is based totally on the speaker's subjective view and which does not expressly state or imply the existence of underlying facts, usually will not be actionable in defamation, because "falsity is an indispensable element of any defamation claim and a purely subjective statement can be neither true nor false." Bussie v. Lowenthal, 535 So.2d 378, 381 (La. 1988) (internal citation omitted).

In the First Amended Complaint, Jackson alleges that the "defendants . . . used sensitive information that they learned through their positions . . . as a District Attorney for the 29th [J]udicial District and posted frivolous posts about [Jackson]" that were defamatory on NOLA.com. In her opposition to the motion to dismiss, Jackson states that after McElwee retired from the District Attorney's Office, "McElwee posted frivolous statements about [Jackson] on NOLA.com" and that Chaisson is liable because he is responsible for the actions of a former

employee of his office. Jackson does not allege that McElwee, Chaisson or Morel published any particular allegedly defamatory words. Further, Jackson does not allege facts to support the elements of falsity, malice and injury attributable to defamatory statements allegedly made by McElwee, Chaisson or Morel. Therefore, Jackson did not state a claim for defamation against McElwee, Chaisson or Morel and those claims dismissed.

**IV.     Jackson's Intentional Infliction of Emotional Distress Claims**

Chaisson, McElwee and Morel move to dismiss Jackson's intentional infliction of emotional distress claims.

To recover for intentional infliction of emotional distress, a plaintiff must establish: (1) that the defendant's conduct was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and, (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). Under Louisiana law, "extreme and outrageous conduct" is conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" Rice v. Reliaster Life Ins. Co., 770 F.3d 1122, 1137 (5th Cir. 2014) (quoting White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991)).

In the complaint, Jackson states that she brings claims for intentional infliction of emotional distress, but she does not put forth any allegations that satisfy the elements of that tort. Jackson states that the defamatory statements endangered her life and were made to intimidate her. However, there are no allegations that demonstrate extreme or outrageous conduct or that the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be substantially certain to result from their alleged actions. Therefore, the motion to dismiss

9

Jackson's infliction of emotional distress claims made on behalf of Chaisson, Morel and McElwee is GRANTED, and those claims are dismissed.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed on Behalf of Joel T. Chaisson II in his Official Capacity as District Attorney for the 29th Judicial District, State of Louisiana, Kim K. McElwee, Former Assistant District Attorney for the 29th Judicial District, State of Louisiana, and Harry J., Morel, Jr., Former District Attorney for the 29th Judicial District, State of Louisiana (Doc. #21) is **GRANTED**, and plaintiff's claims against them are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Amended Complaint filed on Behalf of Joel T. Chaisson II in his Official Capacity as District Attorney for the 29th Judicial District, State of Louisiana, Kim K. McElwee, Former Assistant District Attorney for the 29th Judicial District, State of Louisiana, and Harry J., Morel, Jr., Former District Attorney for the 29th Judicial District, State of Louisiana (Doc. #39) is **GRANTED**, and plaintiff's claims against them are **DISMISSED**.

New Orleans, Louisiana, this __28th__ day of February, 2018.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**